IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MICHAEL G. BROWN, | ) | CASE NO. 05-49053-H3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

ENTERED
03/31/2008

### MEMORANDUM OPINION

The court has held a hearing on the "Motion of the United States Trustee to Compel Debtor to Pay Quarterly Fees and to File Affidavit of Disbursements" (Docket No. 172). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Michael G. Brown ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2005.

Debtor is a medical doctor. At all times pertinent to the instant case, Debtor was employed by North Houston Hand Center, P.A., an entity which Debtor wholly owns.

On November 16, 2005, Debtor filed schedules, indicating $85,000 in monthly net income, and $82,450 in monthly

expenses.  Debtor's schedules indicated $8,933.236.82 in secured debt, $660,497.00 in priority unsecured tax debt, plus a monthly obligation to Debtor's former spouse, and $9,674,595 in unsecured debt.  (Docket No. 20).

Debtor filed a Chapter 11 plan on February 1, 2006 (Docket No. 44), and modified the plan on April 12, 2006 to correctly identify one creditor.  (Docket No. 75).

Debtor's plan defines "Distribution" or "Distributions" to mean the distribution or distributions to be made pursuant to the plan.  (Docket No. 44, at p. 7).

The plan contains a typographical error regarding the payment of fees to the United States Trustee.  Section 11.13 of the Plan provides, verbatim:

> 11.13  Payment of Fees.  All fees payable on or before the Effective Date (i) pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, and (ii) to the United States ee, shall be paid by the ee.

(Docket No. 44, at p. 26).

The plan was confirmed by order entered May 10, 2006. The order confirming the plan provides in pertinent part:

> ORDERED that the reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.  After confirmation, the reorganized Debtor shall file with this Bankruptcy Court and shall serve on the United States Trustee a financial report for each quarter, or portion thereof, that this Chapter 11 case

>       remains open in a format prescribed by the United
>       States Trustee.

(Docket No. 82, at p. 3).

In the instant motion, the United States Trustee ("UST") seeks an order compelling Debtor to file an affidavit of disbursements, and seeks payment of quarterly fees.  In the Motion, UST asserts that Debtor has not filed operating reports since October, 2005, and that quarterly fees of $6,000 are owed.

Debtor filed a response to the instant motion, asserting that on or about March 14, 2006, Debtor forwarded operating reports for November, 2005 through January, 2006 to UST.  Debtor asserted that he filed quarterly reports of distributions under the plan, and made quarterly payments.  There are no reports of distribution on the docket.

On October 7, 2007, Debtor filed a postconfirmation certificate, indicating that he had made distributions under the plan.  (Docket No. 173).  A Final Decree was entered on October 23, 2007.

At the hearing on the instant motion, counsel for UST asserted that Debtor's calculation of the amount due is incorrect.  UST asserts that "disbursements" on which the quarterly fees must be paid includes not only Debtor's distributions under the plan, but also Debtor's expenditures, as measured by Debtor's schedule J.

There was no testimony at the hearing on the instant motion. The documentary evidence presented consists of copies of the plan, the confirmation order, the postconfirmation certificate, the final decree, and the docket sheet, copies of billing statements sent by UST to Debtor, the last such statement, dated November 7, 2007, showing an amount owing of $1,750, and a copy of a checks from Debtor to UST's payment center for $1,750.

### Conclusions of Law

The instant case requires that the court harmonize two apparently inconsistent statutory provisions, and interpret a plan provision made ambiguous by a typographical error.

Quarterly fees due to UST are governed by 28 U.S.C. § 1930(a)(6), which provides:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than

4

>     $3,000,000; $8,000 for each quarter in which
>     disbursements total $3,000,000 or more but less than
>     $5,000,000; $10,000 for each quarter in which
>     disbursements total $5,000,000 or more. The fee shall
>     be payable on the last day of the calendar month
>     following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6).

The word "disbursement" is not defined in the statute. It is thus interpreted in accordance with its "ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

Prior to 1996, 28 U.S.C. § 1930(a)(6) required payment of the quarterly fee "until a plan is confirmed or the case is converted or dismissed, whichever occurs first."  In 1996, the provision was amended to strike the words "a plan is confirmed."

Claims for quarterly fees due to UST are accorded second priority treatment.  11 U.S.C. § 507(a)(2).

Looking at treatment of claims in Chapter 11 plans, Section 1129(a)(9)(A) of the Bankruptcy Code provides, as one of the requirements for confirmation of a plan in a Chapter 11 case:

>     (9) Except to the extent that the holder of a
>     particular claim has agreed to a different treatment of
>     such claim, the plan provides that–
>
>         (A) with respect to a claim of a kind specified in
>         section 507(a)(2) or 507(a)(3) of this title, on
>         the effective date of the plan, the holder of such
>         claim will receive on account of such claim cash
>         equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(A).

Turning to 28 U.S.C. § 1930, there is no controlling authority in the Fifth Circuit construing 28 U.S.C. § 1930(a)(6) after the 1996 amendment. Several of the other Courts of Appeal have addressed the issue.

The leading case prior to the 1996 amendment was <u>St. Angelo v. Victoria Farms, Inc. (In re Victoria Farms, Inc.)</u>, 38 F.3d 1525 (9th Cir. 1994). In that case, the court held that Congress intended "disbursements," within the meaning of 28 U.S.C. § 1930(a)(6), "to include all payments from the bankruptcy estate."

In <u>In re Celebrity Home Entertainment</u>, 210 F.3d 995 (9th Cir. 2000), the Ninth Circuit extended the holding in <u>Victoria Farms</u>, holding that "disbursements" includes post-confirmation payments made by a reorganized debtor. In making this determination, the Ninth Circuit looked to the legislative history, noting that the House and Senate conferees agreed to extend the fees after confirmation, and the purpose under the statute of increasing revenues to the UST.

The Sixth Circuit expanded further on the rationale advanced in <u>Celebrity Home Entertainment</u>, holding, without analysis, that:

> We are unable to escape the conclusion that, in passing the 1996 amendment, Congress contemplated that disbursements will encompass all payments to third parties directly attributable to the existence of the bankruptcy proceeding, and that, throughout the proceeding, these payments' essential character will

6

> not change. In other words, the technical source of the payments, be it estate or debtor, is apparently inconsequential. Accordingly, all of these payments, including the debtor's day-to-day, post-confirmation operating expenses, must be accounted for in the calculation of the trustee's quarterly fee. They are all "disbursements" under the statute, and the statute is quite unambiguous that all disbursements, whenever made, drive the fee amount.

In re Danny's Market's, Inc., 266 F.3d 523 (6th Cir. 2001).

The Eleventh Circuit, following Celebrity Home and U.S. Trustee v. Pettibone Corp., (In re Pettibone Corp.), 251 B.R 335 (N.D. Ill. 2000) held that:

> The UST fee on pre-confirmation disbursements, before or after amendment, is calculated to include all disbursements, including those made in the ordinary course of business. It is not limited to payments made to creditors.

In re Jamko, 240 F.3d 1312 (11th Cir. 2001. The Eleventh Circuit further extended its rationale in Jamko, holding, after consulting nine dictionaries, that loans to consumers by a Chapter 11 debtor constituted "disbursements," within the meaning of 28 U.S.C. § 1930(a)(6). In re Cash Cow Services of Florida, LLC, 296 F.3d 1261 (11th Cir. 2002).

Each of the Courts of Appeal which construed 28 U.S.C. § 1930(a)(6) construed it without considering the impact of Sections 507(a)(2) and 1129(a)(9) of the Bankruptcy Code. The rationales advanced in those cases appears to require that the court determine, at the time of confirmation in each Chapter 11 case, the timing and amount of future post-

7

confirmation disbursements of the debtor, and require that the debtor pay a quarterly fee based on such determination in cash on the effective date of the plan.  The only way to harmonize the provisions of 28 U.S.C. § 1930(a)(6) with those of Sections 507(a)(2) and 1129(a)(9) of the Bankruptcy Code is to conclude that "disbursements" described in 28 U.S.C. § 1930(a)(6) are those disbursed on priority and administrative expense claims, the claims of creditors, and the interests of equity security holders pursuant to the plan.

     This court notes the importance of funding the United States Trustee program, and notes that the United States Trustee performs a salutary function in cases before the Bankruptcy Court.  The court also notes that Congress intended, through the adoption of the 1996 amendment, to provide for additional revenue to offset the cost of the United States Trustee program.  However, this court disagrees with the rationale, first set forth in Pettibone and subsequently extended by the Sixth and Eleventh Circuits, that a debtor's post-confirmation operating expenses constitute "disbursements" under 28 U.S.C. § 1930(a)(6).

     Moreover, none of the Courts of Appeal addressing the interpretation of 28 U.S.C. § 1930(a)(6) considered it in the context as applied to an individual Chapter 11 debtor.  In Toibb v. Radloff, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), the Supreme Court held that an individual not engaged in business

may be a Chapter 11 debtor.  The court noted, in rejecting the argument that individuals not engaged in business should not be permitted to be Chapter 11 Debtors because of the availability to creditors of the ability to file an involuntary petition, that:

> In any event, the argument overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition.  See H.R.Rep. No. 95-595, at 120.  Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.

Toibb v. Radloff, 111 S.Ct. 2197, 2202.

The concern, expressed by Congress and elucidated by the Supreme Court, that Chapter 11 would impose involuntary servitude on an individual, appears to be presented in a case in which an individual Chapter 11 debtor is compelled to pay a portion of his wages to the government until the case is closed, calculated not only on the portion of expenditures dedicated under the plan to repayment of debts, but also to that portion of personal expenditures the individual makes, for gasoline, groceries, home maintenance, health care, and other necessaries.  The involuntary statutory obligation to pay quarterly fees to UST during the pendency of the Chapter 11 case differs from the obligation of the Debtor in the instant case to pay claims through the plan, which he undertook voluntarily.

In the instant case, the plan provision for the payment of UST fees is ambiguous, because of a typographical error which renders the last clause nonsensical.  The court thus interprets the plan based on the language of the confirmation order.  The court finds that the plan provided that Debtor would pay the fees through the date of confirmation of the plan on the effective date, and would pay a quarterly fee based on disbursements to creditors under the plan from that time until the time the case was closed.

The confirmation order further required that Debtor file quarterly reports.  Those reports do not appear on the docket.  Debtor contends that the reports were delivered to the UST.  The court notes that the UST did not transmit the reports to the Clerk of this court (as would have been required pursuant to Bankruptcy Rule 5005(c) if the reports were erroneously delivered for filing to UST).  Accordingly, the court will require that Debtor file the quarterly reports indicating the disbursements to creditors under the plan, and, to the extent not already paid, pay the fee provided by 28 U.S.C. § 1930(a)(6) with respect to such reports.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas March 31, 2008.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE